Aaron Raiser,
Email: aaron_raiser@yahoo.com
20058 Ventura Blvd. #113
Woodland Hills, Ca 91364
P: 818.581.4818

In Pro Per

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AARON RAISER,                                )   Case No: 5:19-cv-00183-DSF-KK
                                             )
                    Plaintiff,               )
                                             )
                                             )
vs.                                          )   THIRD AMENDED COMPLAINT
                                             )
                                             )   1.  BANE ACT – CIV. CODE §52.1
                                             )   2.  UNRUH CIVIL RIGHTS
City of Murrieta,                            )   3.  42 USC 1983 – EQUAL PROTECTION
Michael Jacob,                               )   4.  42 USC 1983 – 4TH AMENDMENT
Tino Abbate,                                 )   5.  DECLARATORY JUDGMENT
Does 3, 4, 7, 8, 11, 12,                     )   6.  INJUNCTIVE RELIEF
                                             )   7.  VIOLATION OF THE ADA, 42 U.S.C. §
                                             )       12101 ET SEQ.
                    Defendants.              )
                                                 JURY DEMAND

_____

Plaintiff complains against Defendants and for causes of action alleges:

## **PARTIES**

1.  Plaintiff is a resident of Riverside County.

2.  City of Murrieta is a political subdivision of the state of California.

3.  Michael Jacob is a Murrieta city police officer sued in his individual capacity and on

    information and belief a resident of Riverside County.

4.  Tino Abbate is a Murrieta city police officer sued in his individual capacity and on

    information and belief a resident of Riverside County.

5. Doe 3, 4, 7, 8, 11, 12, 20-40 are Murrieta city police officers who are responsible for wrongs

    alleged herein whom Plaintiff is unable to identify by name at present and whom Plaintiff shall

    name when their identify becomes available.

**JURISDICTION AND VENUE**

6.  This Court has concurrent jurisdiction pursuant to Civil Code 52, 52.1[1], jurisdiction under 42

   USC 1983 and the common law.   Damages sought exceed $75,000.

7. Venue is proper in this Court because the acts of the Defendants took place in Murrieta, and

   Riverside county, CA.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8.   Plaintiff filed with the city of Murrieta a governmental notice of claim regarding some of the

allegations found herein (the July 1, 2018 unlawful detainment) in or about October 2018 the city

of Murrieta denied those claims in or about November 2018.

**GENERAL ALLEGATION AS TO ALL CAUSES OF ACTION**

**(As To All Defendants)**

9.    On or about January 27, 2017 Plaintiff was legally sitting in his car parked on the street in

front of a public park in Murrieta; the time of day was around 1 pm.

10.  Defendant Michael Jacob approached Plaintiff's and asked Plaintiff something about

whether he were homeless and/or expressed his belief that Plaintiff was homeless.

11.  Defendant then told Plaintiff it was illegal to live out of one's vehicle in the city of Murrieta.

That statement was false as there were no laws prohibiting Plaintiff from living out of his car in

the city of Murrieta.   Defendant then told Plaintiff he had to leave the city.

12.  Plaintiff asked if he were free to leave and Defendant said Plaintiff could leave and

indicated if Plaintiff stayed he would detain Plaintiff and issue Plaintiff a citation.

13.  Plaintiff did not want to leave and was desirous to remain parked where he was.  Due to the

threat of Defendant to detain and cite Plaintiff, Plaintiff did not feel free to go about his business.

14.  Defendant and told Plaintiff he had to leave the city of Murrieta.

---

[1] While the court accepted the R&R, it did not dismiss specifically the state action claims and allowed those to be
amended.

15.  In so many words, Defendant told Plaintiff that he was not allowed in Murrieta if Plaintiff was living out of his car.

16.  By Defendant's language, threatening appearance and demeanor, including having a gun and handcuffs, a police badge, police car and police uniform, and with Plaintiff being aware personally and on the news that police can act violently, hurt, and kill people who do not obey police orders, Plaintiff felt threatened with detainment, citation, arrest, jail and prosecution if Plaintiff if Plaintiff drove into Murrieta in a car he were living out of.

17.  Plaintiff does live out of his car. There are no Murrieta laws that prohibit a person from driving into Murrieta in a car they live out of, or living in a car in the city of Murrieta.

18.  Plaintiff has been excluded by threats, intimidation and coercion from Murrieta.

19.  Plaintiff has been excluded by threats, intimidation and coercion from Murrieta from access and accommodation to all businesses in Murrieta, unless of course Plaintiff walks into Murrieta.

20.  While Plaintiff as not been precluded from walking in to Murrieta Plaintiff has a bad knee and back which prohibit from walking into Murrieta, especially when needing to carry anything, and further personal safety issue and personal reasons make walking into Murrieta prohibitive. Plaintiff can easily be hit by a car while walking to and from Murrieta and the main streets to and from businesses in Murrieta from Temecula such as Ynez and Jefferson have no sidewalks.

21.  Plaintiff also recently had the passenger side window of his car smashed out by vandals/thieves and as a result Plaintiff has no money to fix it and can't leave his car alone as all his belongings can be stolen making travel via walking prohibitive.

22.  Plaintiff fears future detainment, citation and/or arrest, including prosecution, if he drives into the city of Murrieta, including violence from the police to effectuate any detainment and/or arrest of Plaintiff if he returns to Murrieta in his car.

23.  Plaintiff faces imminent threat of injury if he returns to Murrieta in his car of future detainments, possible citation, arrest and jail, and prosecution, and has a reasonable fear of such.

24.  Plaintiff fears physical force by the police – amounting to violence – in arresting Plaintiff if he again enters the city of Murrieta. Plaintiff does not go into the city of Murrieta limits as a result of Defendant's threats.

25.   In each cause of action and factual allegation Michael Jacob was acting within the course and scope of his employment with city of Murrieta who is liable under respondeat superior for his actions for state law claims herein, and pursuant to custom, policy and training of city of Murrieta.

26.  On or about December 1, 2017 Plaintiff sent a letter to the Murrieta police chief, Mayor, and each city council member about Jacob's conduct alleged herein and ask that they simply speak with Jacobs and get Plaintiff an assurance that Jacob would not follow though on any of his threats if Plaintiff returns to Murrieta in is car.  The whole matter could have been resolved and no need to bring the present action as to future injury, and absent other constitutional violations, this entire case likely could have been avoided.

27.  Each of these in turn refused to take any action to resolve the matter or to allow Plaintiff to return to Murrieta in his car, and each, including the city of Murrieta, have made, accepted, and ratified Jacob's actions and as a result his actions are the official custom, policy and practice of Murrieta.

28.  Plaintiff's dentist of 8 years is in Murrieta.   Plaintiff has special needs reasons for going to that dentist.   As a result of Defendant's actions Plaintiff has been precluded from seeing his dentist in Murrieta for 4 years, resulting in damage to Plaintiff's teeth.

29.  On or about October 2017 Plaintiff needed to get a brain MRI for possible life threatening health issues and Plaintiff's insurance only covered the procedure in Murrieta.    Plaintiff barely had the money and was forced to travel to Fallbrook for the same procedure and pay for it himself.

30.  Plaintiff has been precluded from patronizing businesses in Murrieta, including accommodations provided by those businesses, been unable to seek work in Murrieta, worship at

any church in Murrieta, petition Murrieta city council in person at Murrieta city council meetings for redress for what they and Jacob has done, and been denied the chance to travel via car through its streets.

31.    The unlawful detainments of Plaintiff are due to a custom, policy or practice, official or unofficial, of the city of Murrieta to unlawfully detain citizens who are not suspected of violating any laws, including homeless people, and to exclude homeless people from their city. Plaintiff has been personally unlawfully detained with no basis by the Murrieta police 8 times from 2015 – 2018 by the Murrieta police where Plaintiff was breaking no laws.   Plaintiff was detained unlawfully in Temecula in a public area south of Murrieta, between Jefferson and Diaz, once again in the same general location in 2016, in addition to the detainments of this action.

32.   Plaintiff personally has witnessed the Murrieta police patrol the same area looking for homeless people over a 4 year period of time.

33.   Plaintiff has personally spoken with a group of homeless people who temporarily lived in the same area south of Murrieta, between Jefferson and Diaz and Plaintiff was told that the group had been unlawfully detained and ID'd by the Murrieta police on "several" occasions.  That group consisted of 8 persons along with 1 other person who lived with them at the time and was kicked out of the group, and 3 – 4 others who lived about 100 yards south of the main group. These 12-13 people were unlawfully stopped, detained, and ID'd by the Murrieta police on at least 3 occasions for a total of 36 unlawful detainments of 12 different homeless people.

34.   On about August 29, 2019 I spoke with an African American homeless person in the Winco parking lot (which effectively borders Murrieta) in Temecula who stated he had been stopped and detained on at least 10 occasions without basis by the Murrieta police and also stated that Murrieta was "F*cked up" as to how they treat homeless people. He said the Temecula police left him alone.

35.   On about August 17, 2019 I spoke to a homeless person in front of the FedEx Office (near the Winco) on Winchester in Temecula who gave his estimate that he also was stopped and detained by the Murrieta police 10 times without a lawful basis.

36.   The city of Murrieta has a custom, policy and/or practice of unlawfully detaining citizens to ID them without basis.

37.   The following chart is from Riverside county records and supports Murrieta has policies, and customs of driving out the homeless from Murrieta and are for the year 2019 and are similar for the year 2020:

| City | Approx. Pop. | # Homeless | Homeless to Population Ratio |
| --- | --- | --- | --- |
| Murrieta | 113,000 | 17 | 1 per 6647 people |
| Temecula | 114,000 | 59 | 1 per 1932 people |
| Lake Elsinore | 63,000 | 66 | 1 per 950 people |
| Perris | 78,000 | 77 | 1 per 1012 people |
| Riverside City | 330,000 | 201 | 1 per 1641 people |

Murrieta is geographically and otherwise very similar to Temecula and Lake Elsinore and Perris which all surround Murrieta.  The reason for the low numbers of homeless in Murrieta are the draconian and unconstitutional policies and practices of the city of Murrieta, including their police, in driving the homeless from their city, as happened to Plaintiff.

38.   The city of Murrieta has a custom, policy and/or practice of unlawfully detaining homeless people to ID them without basis.

39.   The city of Murrieta has a custom, policy and/or practice of unlawfully detaining homeless people to harass them out of the city of and/or away from the city of Murrieta.

40.   Plaintiff otherwise has no viable means travel into Murrieta to speak with other homeless people there to ask them as to whether they are unlawfully detained by the Murrieta police as Plaintiff is not permitted to drive into Murrieta, walking is not feasible given Plaintiff's health issues, and the area where many homeless hang out Plaintiff was unlawfully ordered out of by the Murrieta police.  Had Plaintiff not been effectively banished from Murrieta Plaintiff would

6

have travelled into Murrieta, spoken with homeless people there, and Plaintiff would have been able to discovery more instances of civil rights violations like those Plaintiff went through. Plaintiff is effectively unable to leave my car unattended as it have his life's belongings in it and has a smashed out window.

41. Plaintiff has also crossed paths with officer Michael Jacobs on at least 5 prior occasions in the months leading up to January 27, 2017 based on Plaintiff's observations. Each of those 5 occasions took place in the shopping center where a 99 cent Only store is located off of Jefferson near Murrieta Hot Springs Rd. Plaintiff would shop at that store almost daily and would sit in Plaintiff's car after shopping in the parking lot and about 2 times per week average would notice a Murrieta police SUV which would enter and slowly drive through the parking lot which almost always drove within 50 yards of where Plaintiff was parked and about 15% of the time drove right in front of Plaintiff. Officer Jacobs is African-American and on 2 occasions Plaintiff noticed that the driver of the police SUV was African American. Approximately on 50 occasions after leaving the parking lot Plaintiff would drive north on Jefferson Ave and travel to the Santa Rosa hiking area which was my routine at the time Jacob detained my and ordered me out of Murrieta, and the Murrieta police station is located on Jefferson Ave. so on approximately 50 occasions Plaintiff drove directly in front of the Murrieta police station and the length of the area in Murrieta which was Jacob's beat.

42. Plaintiff has been precluded from entering Murrieta due to the unlawful threats of Jacobs.

43. Jacobs threats are real, and imminent upon Plaintiff's return to Murrieta.

44. Jacobs "speech" made in making the threats do not involve speech alone as those threats were made by someone with a gun in his holster, who also had handcuffs, and who is empowered by the state to incarcerate Plaintiff at his discretion for violating his orders, even when wrong.

45. Jacobs "speech" to arrest Plaintiff also entailed the use of force and violence to follow through with his threats as Plaintiff would be subjected to violence to be arrested or detained against his wishes to be cited Jacob if Plaintiff chose to leave against Jacob's orders.

46.   For example, if Jacob unlawfully threatens to cite or arrest Plaintiff if he entered a city council meeting, which Plaintiff and all others had the right to do, with Jacob standing next to the door when making that threat, and Plaintiff attempted to walk up and pull open the door to go inside the city council meeting, there is the natural threat Jacob shall use violence to restrain Plaintiff, prevent him from entering, with Jacob tackling Plaintiff, forcing him to be handcuffed and  taken to jail etc.

47.   Plaintiff has been subjected to speech containing threats of violence:

18 U.S. Code § 16 defines violence as that which "has as an element the use, attempted use, or threatened use of physical force against the person or prop-erty of another," or "by its nature, involves a substantial risk that physical force against the person"

The legal dictionary at  https://legal-dictionary.thefreedictionary.com/violence  define it as:

VIOLENCE. The abuse of force. Theorie des Lois Criminelles, 32. That force which is employed against common right, against the laws, and against public liberty. Merl. h. t, 2. In cases of robbery, in order to convict the accused, it is requisite to prove that the act was done with violence; but this violence is not confined to an actual assault of the person, by beating, knocking down, or forcibly wresting from him on the contrary, whatever goes to intimidate or overawe, by the apprehension of personal violence, or by fear of life, with a view to compel the delivery of property equally falls within its limits. Alison, Pr. Cr. Law of Scotl. 228; 4 Binn. R. 379; 2 Russ. on Cr. 61; 1 Hale P. C. 553. When an article is merely snatched, as by a sudden pull, even though a momentary force be exerted, it is not such violence as to constitute a robbery. 2 East, P. C. 702; 2 Russ. Cr. 68; Dig. 4, 2, 2 and 3.

A Law Dictionary, Adapted to the Constitution and Laws of the United States. By John Bouvier. Published 1856.

Black's online law dictionary at https://thelawdictionary.org/violence/ states:
What is VIOLENCE?
The term "violence" is synonymous with "physical force," and the two are used interchangeably, iu relation to assaults, by elementary writers on criminal law. State v. Wells, 31 Conn. 212.

48.   Plaintiff has been subject to violence, the threat of violence, the threat of the use of physical force, and the like against his person if not complying with Jacob's threats against Plaintiff alleged herein.

## FIRST CAUSE OF ACTION
### Cal. Civ. Code §52 Violations – Unruh Civil Rights
### (Michael Jacob, City of Murrieta)

49.   Plaintiff incorporates all allegations of the Complaint herein.

50.   Under the Unruh Civil Rights Act it is wrongful to deny a person equal accommodations and access to a public business.

51.   Unruh Civil Rights violations also occur when someone is denied equal accommodations or public business access to any person on arbitrary and/or capricious grounds.  See In re Cox (1970) 3 Cal. 3d 205.

52.   Defendant prevented Plaintiff from entering a public business in Murrieta on the grounds Plaintiff's car was homeless, violating the Unruh Act.

53.   Defendant has prevented Plaintiff from entering any and **all public businesses** in Murrieta, denying Plaintiff equal accommodations under the Unruh Act.

54.   While Plaintiff as not been precluded from walking in to Murrieta Plaintiff has a bad knee and back and now heart / artery issues which prohibit from walking into Murrieta, especially when needing to carry anything, and further personal safety issue and personal reasons make walking into Murrieta prohibitive.

55.   Defendants' acts in denying Plaintiff the right to public accommodations in Murrieta was arbitrary and/or capricious.  Defendant also denied Plaintiff access to accommodations in Murrieta because he was homeless and to this extent, Defendant's actions were substantially motivated on that, and are arbitrary and capricious.

56.    Defendants were acting under color of state law.  Defendant acted intentionally.  Defendant acted out of malice towards Plaintiff and/or the homeless.

57.   Plaintiff was injured thereby;

58.   Defendants acts were the proximate cause of Plaintiff's injury.

59.  Plaintiff seeks injunctive, declaratory and mandamus relief only to allow Plaintiff to return in his car to Murrieta.

## FOURTH CAUSE OF ACTION
## 42 U.S.C 1983 – EQUAL PROTECTION
### (Michael Jacob, City of Murrieta)

60.  Plaintiff incorporates all preceding allegations herein.

61.  Plaintiff had his right to intrastate travel taken and/or burdened.

62.  The court in United States v. Wheeler (1920) 254 U.S. 281, 293 said: "In all the states, from the beginning down to the adoption of the Articles of Confederation, the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, <u>to move at will from place to place therein</u> …"

63.  "the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and <u>the right, ordinarily, of free transit from or **through the territory of any State** is a right secured by . . . the Constitution.</u>"  Williams v. Fears 179 U.S. 270 (1900).

64.  Plaintiff has been denied equal protection of laws under the 14th Amendment of the U.S. Constitution, Defendants having intentionally acted to treat Plaintiff differentially than others similarly situated in Murrieta who can drive, park and sit in their cars on city streets without issue and ONLY Plaintiff is ordered out due to Jacob's claimed  appearance of his car or being someone without a home.   Plaintiff's car was in fact prima facie identical in all relevant respects or directly comparable in all material respects to all other similarly situated citizens.  There is no rational basis for the differential treatment.   Jacob's proffered basis for forcing Plaintiff out of the Murrieta based on the falsehood that there was a law prohibiting homeless people from living out of their cars in the city was pretext.  Jacob's conduct in denying Plaintiff equal protection was driven by Plaintiff being homeless and/or because Plaintiff was treated as a class of one.  Those similarly situated were prima facie identical in all relevant respects or directly comparable in all material respects as Plaintiff.

65.  All other citizens in the United States can travel into and through Murrieta in their automobiles, and only Plaintiff can not due to him living out of it which is not against any law.

66.  No federal, state or local laws prohibit a person from travelling into or through a city due to them living out of their car.

67.  Plaintiff and Plaintiff alone must walk into Murrieta and not drive his car, and there is no rational basis for that; further, Plaintiff has a bad knee making walking long distances difficult if not impossible, and there are safety issues in walking such as being struck by a car.    Plaintiff would be otherwise forced to take a bus, however, busses are very intermittent in Temecula to Murrieta, and there are severe waiting times, and health issues; for example, people who ride the bus might be, and are sick, and sneeze, getting fellow riders sick, and in San Diego there is a hepatitis A outbreak which is close to Temecula, and easily Plaintiff might pick up hepatitis A riding a bus or coronavirus, especially a crowded one.  Plaintiff further has personal/religious beliefs which limit his ability to take public transportation.

68.  There are personal freedom issues being forced to ride a bus.   No one else is forced to do such things to come into Murrieta and there is no rational basis for forcing Plaintiff to do these things.

69.  Defendant was acting under color of state law;

70.  Plaintiff has been injured thereby.  Plaintiff has suffered mentally, emotionally, and been precluded from engaging in commerce and receiving needed medical car in Murrieta;

71.  Plaintiff faces the threat of detainment, citation, arrest and/or prosecution if he enters Murrieta; no other citizen in this county faces a similar threat.

72.  Defendants acts were the proximate cause of Plaintiff's injury.

## SIXTH CAUSE OF ACTION
### California State Constitution Violations - Bane Act
### (Michael Jacob, City of Murrieta)

73.  Plaintiff incorporates all allegations of the complaint herein.

74.   The Bane Act proscribes in California Civil Code § 52.1 a person from doing the following: "interfer[ing] by threats, intimidation, or coercion, or attempt[ing] to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., `threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he . . . he had the right to do under the law or to force the plaintiff to do something that he . . . was not required to do under the law. Shoyoye v. County of Los Angeles, 203 Cal.App.4th 947, 955-56 (2012) (quoting Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998)). "A defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." Id. at 846.

75.   One of many rights interfered with is the right to travel upon the public street of a city the court in Escobedo v. State of California (1950) 35 Cal.2d 870, 875-876,4 the court stated in part:

"Fundamentally it must be recognized that in this country 'Highways are for the use of the traveling public, and all have ...the right to use them in a reasonable and proper manner, and subject to proper regulations as to the manner of use.' (13 Cal.Jur.371, § 59.) 'The streets of a city belong to the people of the state, and the use thereof is an inalienable right of every citizen, subject to legislative control or such reasonable regulations as to the traffic thereon or the manner of using them as the legislature may deem wise or proper to adopt and impose.' (19 Cal.Jur.54, § 407.) 'Streets and highways are established and maintained primarily for purposes of travel and transportation by the public, and uses incidental thereto. Such travel may be for either business or pleasure . . . The use of highways for purposes of travel and transportation is not a mere privilege, but a common and fundamental right, of which the public and individuals cannot rightfully be deprived . . . '[A]ll persons have an equal right to use them for purposes of travel by proper means, and with due regard for the corresponding rights of others.' (25 Am.Jur.456-457, § 163; see, also, 40 C.J.S. 244-247, § 233.) Notwithstanding such general principles characterizing the primary right of the individual, it is equally well established (as is recognized in the texts above cited) that usage of the highways is subject to reasonable regulation for the public good. In this connection, the constitutionality of various types of financial responsibility laws has been often upheld against contentions that they violated the due process clause of the Fourteenth Amendment. 'The use of the public highways by motor vehicles, with its constant dangers, renders the reasonableness and necessity of regulation apparent. . . ."

76.   The California Supreme Court stated:

"The streets of a city belong to the people of the state, and every citizen of the state has a right to the use thereof, subject to legislative control .... The right of control over street traffic is an exercise of a part of the sovereign power of the state ...." (Ex parte Daniels [31 Cal.3d 550] (1920) 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172].) fn. 3

"'The use of highways for purposes of travel and transportation is not a mere privilege, but a common and fundamental right, of which the public and individuals cannot rightfully be deprived ... [A]ll persons have an equal right to use them for purposes of travel by proper means, and with due regard for the corresponding rights of others.'" (Escobedo v. State of California (1950) 35 Cal.2d 870, 875-876 [222 P.2d 1], fn. 4 quoting 25 Am.Jur., Highways, § 163, p. 457; italics added.)

77. Defendant attempted to – and has - interfere by threat, intimidation and/or coercion with Plaintiff's exercise and enjoyment of rights secured by the U.S. and state Constitutions and state and federal statute.   Plaintiff has the right to not be detained and cited, and to be treated equally, under the 4th and 14th Amendments of the U.S. Constitution for simply driving his car in Murrieta with personal belongings in it, however fervently that Defendant dislikes that.   Plaintiff has the right to travel throughout the state unhindered and without fear of arrest, citation or detainment simply because the city of Murrieta and/or Defendant dislikes the homeless.   Plaintiff has the freedom to contract and certainly has the right to see his dentist, optometrist and go get needed imaging done at the MRI lab in Murrieta and enjoy contractual relations with these persons and businesses.  Plaintiff has the right to not have his right to interstate travel burdened.   Plaintiff has the right to petition Murrieta city council for redress for Defendant's wrongful conduct.   Plaintiff has the right to associate with those whom he wished, in any city.  Each of these rights has been denied or materially burdened.  Under the state constitution Plaintiff is also guaranteed similar rights.

78.   Plaintiff was threatened with citation if he did not leave Murrieta and if Plaintiff ever returned to Murrieta in a car he lived out of.

79.   Plaintiff was threatened with arrest if he did not leave Murrieta and if Plaintiff ever returned to Murrieta in a car he lived out of.

80.   Plaintiff was coerced through fears the threat of force and violence by Defendants if he did not leave Murrieta and if Plaintiff ever returned to Murrieta in a car he lived out of.

81.  Plaintiff was intimidated into leaving Murrieta and not returning by Jacob.

82.  Plaintiff was coerced into leaving Murrieta and not returning by Jacob.

83.  Plaintiff was forced into leaving Murrieta and not returning by Jacob through threats.

84.  Defendant attempted to intimidate Plaintiff into leaving Murrieta and not returning by Jacob.

85.  Defendant attempted to coerce Plaintiff into leaving Murrieta and not returning by Jacob.

86.  Defendant attempted to force Plaintiff into leaving Murrieta and not returning by Jacob through attempted threats.

87.  Plaintiff also fears the use of violence being used against him if upon return to Murrieta Plaintiff wishes to go about his business there and in refusing to be unlawfully detained, the police shall engage in acts of violence to subdue and/or arrest Plaintiff for the exercise of his right to be free from unreasonable seizure.

88.  Plaintiff additionally must – if Defendants attempt to cite Plaintiff – voluntarily be detained where he otherwise would be free to go about his business if Defendants decide to cite Plaintiff, and Plaintiff fears the use of force and violence if Plaintiff attempts to go about his business.

89.  Plaintiff was and is injured by Defendant's actions.

90.   Defendant's actions were the proximate cause of Plaintiff's injury.

### SEVENTH CAUSE OF ACTION
### 42 U.S.C 1983 – Civil Rights Violations - Incident 2
### (City of Murrieta)

91.   Plaintiff incorporates all allegations of the Complaint herein.

92.   Plaintiff was also legally sitting in his car in Temecula or at least was unaware of any laws being broken in April 2017 when 2 Murrieta officers drove into Temecula and detained Plaintiff simply because they felt like ID'ing him.

93.  Plaintiff has been similarly detained by Murrieta officers on 2 prior occasions where Plaintiff was legally minding his own business in Temecula in 2015 and/or 2016.

94.  Plaintiff attempted to get via records requests information from Murrieta which might have shed light on the legality of the detainment in April and Murrieta refused to give any information.

95.  Defendants were acting under color of state law.

96.  Plaintiff had his civil rights violated under the 4th and 14th Amendments.

97.  Plaintiff was injured thereby having lost his rights and having to live in fear of unlawful detainments.

98.  Defendants acts were the proximate cause of Plaintiff's injury.

**THIRTEENTH CAUSE OF ACTION**
**42 USC 1983 – 4TH AMENDMENT**
**(Michael Jacob, City of Murrieta)**

99.  Plaintiff incorporates all preceding allegations herein.

100. Plaintiff was seized under the 4th Amendment of the U.S. Constitution by Jacob on January 27, 2017.

101.

> A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, " 'by means of physical force or show of authority,' " terminates or restrains his freedom of movement, Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), "through means intentionally applied," Brower v. County of Inyo, 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original).

See *Brendlin v. California* 551 U.S. 249, 254 (2007)

102. Plaintiff was in fact seized under the 4th Amendment per Brdndlin as Jacobs did in fact restrain Plaintiff's freedom of movement by a show of authority when Plaintiff's freedom of movement in the city of Murrieta was completely terminated and denied where Plainiff was forced to leave Murrieta or face citation, arrest, jail etc. if he didn't immediately leave the city.

103. A person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to remain somewhere, by virtue of some official action. See Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (whether seizure occurred depends upon whether a reasonable person would believe he was "not free to decline the officers' requests or otherwise terminate the encounter"); Evans v. Ball, 168 F.3d 856, 861 (5th Cir. 1999) (collecting cases holding that pre-trial restriction on interstate travel is a seizure); Kernats v. O'Sullivan, 35 F.3d 1171, 1177-78 (7th Cir. 1994) (denial of freedom to remain in a place can be a seizure); Beverlin v. Grimm, 1995 WL 470274 (N.D.Ill. Aug. 4, 1995), 1995 U.S. Dist. LEXIS 11145, *8 n. 1 ("[W]e think the Terry rationale is applicable to unlawful interference with freedom of movement, whether it be exerted by preventing a person from leaving or forcing her to leave."). We conclude that Bush's allegations, viewed in the light most favorable to him, establish an unreasonable seizure in violation of the Fourth Amendment by virtue of his being ordered back across Eight Mile.

104. Plaintiff did not feel free to remain in the place he was at as Jacob threatened Plaintiff with citation if he remined in that location and did not immediately leave the city of Murrieta.   Jacob also threatened Plaintiff detainment if he remined in that location and did not immediately leave the city of Murrieta.

105. Plaintiff did not feel free to ignore Jacob and go about his business or to terminate the encounter.   See Michigan v. Chesternut, 486 U.S. 567, 569 (1988) ("In this case, we review a determination by the Michigan Court of Appeals that any "investigatory pursuit" of a person undertaken by the police necessarily constitutes a seizure under the Fourth Amendment of the Constitution. We conclude that the police conduct in this case did not amount to a seizure, for it would not have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.")

106. Ninth Circuit case law holds that threatened injury constitutes "injury in fact". See Central Delta Water Agency v. United States, 306 F.3d 938, 947-48 (9th Cir. 2002)

107. Plaintiff's was threatened with a loss of his 4th Amendment rights to be free from unreasonable seizure and under 9th Circuit holdings that constituted an injury-in-fact to Plaintiff's 4th Amendment rights. Thus, Plaintiff must prevail on this case of action. Plaintiff's seizure would have otherwise been unreasonable as Plaintiff was otherwise violating no laws and was not suspected of violating any laws.

108. Plaintiff was threatened with detainment if he did not leave Murrieta, and by virtue of disobedience to Defendant's police order not to return to Murrieta unless Plaintiff ceases to live out of his car which Plaintiff was unable to do, Plaintiff faces a threat to his 4th Amendment rights to be free from unreasonable seizure in the future if he drives into Murrieta in his car which Plaintiff lives out of.

109. It is unreasonable to seize a homeless person because they refuse to leave a city for the sole reason of being homeless and living out of their car which is what Jacob did;

110. It is unreasonable to seize a homeless person because they return to a city driving a car that they live out of which is what Jacob did;

111. Plaintiff was seized under the 4th Amendment of the U.S. Constitution.

112. Defendant was acting under color of state law;

113. Plaintiff has been injured thereby. Plaintiff faces the threat of detainment, citation, arrest and/or prosecution if he enters Murrieta; no other citizen in this county faces a similar threat.

114. Defendants acts were the proximate cause of Plaintiff's injury.

### FOURTEENTH CAUSE OF ACTION
### 42 USC 1983 – 4, 14TH AMENDMENT
### (Doe 3, City of Murrieta)

115. Plaintiff incorporates all preceding allegations herein.

116. In or about November, 2017 Plaintiff was legally walking in an area of Murrieta which is owned by the state or county. Doe 3 drove up to Plaintiff and said he was authorized by the

county/state agency owning the property he could arrest anyone he wants on that property.  On information and belief, he is authorized only to tell homeless people to leave that area if they are living in that area, and then arrest them if they don't leave.   Plaintiff does not live in that area. The trail Plaintiff was on is driven over by about 70 cars per day, and is used by bicycles, to walk on by citizens all or most all days, to ride motorcycles on, ATVs and horseback ride on.   Yet only Plaintiff was excluded from the use of that trail and area.   This was because minutes earlier Doe 3 had talked to Plaintiff when he was parked in his car in Temecula and believed Plaintiff to be homeless.

117.  Plaintiff had a liberty interest and equal protection interest under the 14th Amendment to utilize that trail and area of Murrieta all of which was otherwise legal.  Plaintiff otherwise did not feel free to go about his business and was thus seized under the 4th Amendment as he was forced to leave an area where he otherwise had the right to be.

118. Plaintiff was deprived of these rights by Doe 3.  Similarly situated people are allowed to use that trail and area to walk, hike, drive cars on, drive motorcycles on, bicycles and horses.  Of all people who have hiked on the trail Plaintiff was on, only Plaintiff was ordered to leave and not to return.  It was perfectly legal for Plaintiff to hike on that trail.  Doe 3 acted intentionally to violate Plaintiff's equal protection rights and there was no rational basis for the differential treatment.   Doe 3's proffered basis for forcing Plaintiff out of the Murrieta based on the falsehood that Doe 3 was authorized to arrest people in that area was a falsehood and a pretext.

119.  Plaintiff complained about 5 times to the police chief and various commanding officers who did nothing to alleviate the matter, and they have ratified that conduct and/or it is policy of the city.  Doe 3's conduct in denying Plaintiff equal protection was driven by Plaintiff being homeless and/or because Plaintiff was treated as a class of one.   Those similarly situated were prima facie identical in all relevant respects or directly comparable in all material respects as Plaintiff.

120. Does **3** acted intentionally to seize Plaintiff.

121. Defendants were acting under color of state law;

122. Plaintiff has been injured thereby in losing his civil rights.  Plaintiff faces the threat of detainment, citation, arrest and/or prosecution if he enters that area of Murrieta; no other citizen in this county faces a similar threat.

123. Defendants acts were the proximate cause of Plaintiff's injury.

### FIFTEENTH CAUSE OF ACTION
### 42 U.S.C 1983 – Civil Rights Violations - Incident 3
### (Does 4, City of Murrieta)

124. Plaintiff incorporates all allegations of the complaint herein.

125. On or about December 16, 2017 at about 9:30 am Plaintiff was legally sitting in his car on Borel Rd. near Winchester Rd. overlooking the south end of the runway when **Does 4 who is a** Murrieta police officer pulled up behind Plaintiff, told Plaintiff to turn off his car engine. Plaintiff was breaking no laws and not suspected of breaking any laws.

126.  Plaintiff did not feel free after being told to turn off his car engine.

127.  Defendant asked Plaintiff whether he were on probation or parole, asked Plaintiff when the last time he was arrested, all of which questions Plaintiff answered as Plaintiff felt he had no choice and he asked if Plaintiff had a driver's license.  Plaintiff objected and asked him if he had to give it to him.  Another Murrieta police officer was present who did not interact with Plaintiff.

128.   Plaintiff told him he had a lawsuit against the city of Murrieta and the officer called Plaintiff a jerk and walked away.  After returning to his patrol car Doe 4 ran a background check on Plaintiff's car license plate and on Plaintiff.

129. Defendants were acting under color of state law.   Plaintiff was unreasonably seized under the 4th Amendment.

130. Plaintiff had his civil rights violated under the 4th and 14th Amendments.

131. Does **4** acted intentionally to seize Plaintiff.

132. Plaintiff was injured thereby having lost his rights and having to live in fear of unlawful detainments and in losing his civil rights.

Complaint

133. Defendants acts were the proximate cause of Plaintiff's injury.

## SIXTEENTH CAUSE OF ACTION
## 42 U.S.C 1983 – Civil Rights Violations - Incident 4
## (Does 7-8, City of Murrieta)

134. Plaintiff incorporates all allegations of the complaint herein.

135. On or about January 9, 2018 at about 12:30 pm Plaintiff was legally sitting in his car on Borel Rd. near Winchester Rd. when Does 7-8 who are Murrieta police officers pulled up behind Plaintiff, said they were checking Plaintiff out, and asked Plaintiff if he were on probation or parole and Plaintiff asked them to leave him alone.   The officers said Plaintiff was not free to leave.  As a result Plaintiff did not feel free to leave.  Plaintiff  had to answer their questions as they were conducting an investigation according to them yet they could tell Plaintiff no laws they suspected him of breaking when asked.  The officer then specifically told Plaintiff he was being detained.  One officer asked of Plaintiff lived out of his car.  The officers then demanded Plaintiff give his name and date of birth and they ran a background check and let Plaintiff go.

136. Plaintiff did not feel free to leave during the encounter.   Plaintiff was unreasonably seized under the 4th Amendment.

137. Defendants were acting under color of state law.

138. Does **7-8** acted intentionally to seize Plaintiff.

139. Plaintiff had his civil rights violated under the 4th and 14th Amendments.

140. Plaintiff was injured thereby having lost his rights and having to live in fear of unlawful detainments and in losing his civil rights.

141. Defendants acts were the proximate cause of Plaintiff's injury.

## SEVENTEENTH CAUSE OF ACTION
## 42 U.S.C 1983 – Civil Rights Violations - Incident 5
## (Tino Abbate, City of Murrieta)

142. Plaintiff incorporates all allegations of the complaint herein.

143. On or about July 1, 2018 at about 11:30 am Plaintiff was legally sitting in his car on Borel Rd. near Winchester Rd. when **Tino Abbate** who is a  Murrieta police officers pulled up behind Plaintiff who told Plaintiff to turn his car off.  Plaintiff was breaking no laws and not suspected

of breaking any laws.  Plaintiff asked Tino Abbate if he had broken any laws and Abbate told

Plaintiff he didn't know yet.  Abbate required Plaintiff to give him his driver's license, asked if

Plaintiff were on probation or parole and let Plaintiff go.   Plaintiff is not nor ever been on

probation or parole.

144. Plaintiff did not feel free during the encounter with Abbate.  Plaintiff was unreasonably

seized under the 4th Amendment.

145. Defendant was acting under color of state law.

146. **Tino Abbate** acted intentionally to seize Plaintiff.

147. Plaintiff had his civil rights violated under the 4th and 14th Amendments.

148. Plaintiff was injured thereby having lost his rights and having to live in fear of unlawful

detainments and in losing his civil rights.

149. Defendants acts were the proximate cause of Plaintiff's injury.

## EIGHTEENTH CAUSE OF ACTION
### Federal, California State Constitution Violations - Bane Act
### (Tino Abbate, City of Murrieta)

150. Plaintiff incorporates all allegations of the complaint herein.

151. On or about July 1, 2018 at about 11:30 am Plaintiff was legally sitting in his car on Borel

Rd. near Winchester Rd. when **Tino Abbate** who is a  Murrieta police officers pulled up behind

Plaintiff who told Plaintiff to turn his car off.  Plaintiff was breaking no laws and not suspected

of breaking any laws.  Plaintiff asked Tino Abbate if he had broken any laws and Abbate told

Plaintiff he didn't know yet.  Abbate required Plaintiff to give him his driver's license, asked if

Plaintiff were on probation or parole and let Plaintiff go.   Plaintiff is not nor ever been on

probation or parole.

152. By the use of fear and force and/or intimidation, and/or the attempted use of these, Plaintiff

lost rights owing him to be free from unreasonable seizure under the state and federal

Complaint

constitution. Plaintiff had otherwise the right to leave and go about his business which was taken from him.

153. Plaintiff was and is injured by Defendant's actions losing state and federal rights and suffering mentally and emotionally.

154. **Tino Abbate** acted intentionally to seize Plaintiff.

155. The city of Murrieta is responsible for the Doe Defendants actions under, among other things, respondeat superior.

156. Defendants were acting under color of state law.

157. Defendants' actions were the proximate cause of Plaintiff's injury.

## TWENTIETH CAUSE OF ACTION

### 42 U.S.C 1983 – Civil Rights Violations - Incident 6

### (Does 11, 12, City of Murrieta)

158. Plaintiff incorporates all allegations of the complaint herein.

159. On or about May 8, 2018 at about 9:30 pm Plaintiff was legally driving down Sky Canyon Rd. right before Borel Rd. near Winchester Rd. Does 11, 12 are police of the City of Murrieta.

160. **Does 11, 12** who are Murrieta police officers were parked to the side of the road apparently conversing in their cars and after Plaintiff drove by Doe 11 pulled up behind Plaintiff and activated his police lights and Plaintiff pulled off to the side of the road. Doe 11 walked up to Plaintiff and told Plaintiff he was being detained, and said Plaintiff's car looked oddly suspicious, or suspiciously odd.

161. Plaintiff was not breaking any laws and was not suspected of breaking any laws at the time he was pulled over.

162. Doe 12 then pulled up and assisted with the detainment and said they wanted to make sure Plaintiff was not on America's most wanted list or something to that effect.

163.  Plaintiff was required to give his driver's license to the officers and after a background check was done Plaintiff was free to leave.

164. Plaintiff was unreasonably seized under the 4th Amendment.

165. Does 11 - 12 acted intentionally to seize Plaintiff.

166. The seizure was unreasonable.

167. Defendants were acting under color of state law.

168. Plaintiff had his civil rights violated under the 4th and 14th Amendments. Plaintiff was unlawfully and/or unreasonably seized.

169. Plaintiff was injured thereby having lost his rights and having to live in fear of unlawful detainments.

170. Defendants acts were the proximate cause of Plaintiff's injury.

## TWENTYSFIRST CAUSE OF ACTION
## 42 U.S.C 1983 - DELIBERATE INDIFFERENCE
### (City of Murrieta)

171.  Plaintiff incorporates all allegations of the Complaint herein.

172.  The city of Murrieta through its police chief and mayor and city council acted with deliberate indifference towards Plaintiff's plight.

173.   The mayor and police chief and city council were fully informed by Plaintiff of Jacob's misconduct, and each were on notice that they needed to investigate it, or, as Plaintiff asked, simply get him to agree not to detain, cite, arrest etc. Plaintiff for driving into Murrieta in his car which he allegedly lived out of.  In fact, it would have taken about 1 minute for either the mayor or police chief to simply ask Jacobs to agree to such which likely would have, at that time, ended the need for this lawsuit.

174. The mayor and police chief and city council had a duty to act to remedy the matter involving Jacobs and/or to investigate the allegations.

175. Each were fully informed of Plaintiff's needs and right to travel in his car into Murrieta and that Plaintiff's health and life were in jeopardy if they failed to act.

176. Each were fully informed that Plaintiff would suffer constitutional injury, and likely personal injury, if they did not take steps to remedy the matter with Jacobs or to investigate it.

177. Each had access to the audio recording Plaintiff submitted with summary judgment and the accusations were credible against Jacob

178. The mayor and police chief and city council ratified the misconduct of Jacob as alleged herein.

179. The mayor and police chief and city council acted with deliberate indifference to Plaintiff's plight and injury and future injury.

180. Defendants were acting under color of state law.

181. Plaintiff had his civil rights violated under the 4th and 14th Amendments and continues to have his 4th and 14th Amendments violated.

182. Plaintiff was injured thereby having lost his rights and having to live in fear of unlawful detainments and travel freely in his car like other citizens.

183. Defendants acts were the proximate cause of Plaintiff's injury.

## TWENTYSECOND CAUSE OF ACTION

### Violation Of The ADA, 42 U.S.C. § 12101 et seq. (ADA)

### (Michael Jacob, City of Murrieta)

184. Plaintiff incorporates all allegations of the Complaint herein.

185. Plaintiff is a disabled person for purposes of the ADA. Plaintiff was at all time relevant hereto unable to walk any significant distances. Plaintiff has a heart condition he nearly died from in 2012 which limits Plaintiff's ability to walk greater than 1 mile from time to time from January 30, 2017 to the present. Plaintiff has and had a condition with his hips which severely

Complaint

limited Plaintiff's ability to walk, from time to time from January 30, 2017 to the present any distances greater than 1 mile, and sometimes shorter.   Plaintiff has and had a condition with his back which severely limited Plaintiff's ability to walk, from time to time from January 30, 2017 to the present any distances greater than 50 yards, and sometimes shorter.   Plaintiff has and had a condition with his muscles which severely limited Plaintiff's ability to walk, from time to time from January 30, 2017 to the present any distances greater than 2, and sometimes shorter.

186.  As a result of Plaintiff's physical  disabilities, Plaintiff needed to used his car which he lived out as his only means of transportation into the city of Murrieta to access businesses in the city of Murrieta which Plaintiff was desirous to patronize, such as supermarkets, and to attend city council meetings of the city of Murrieta, and attend church in Murrieta, and to visit Plaintiff's dentist in the city of Murrieta of 8 years, and to obtain needed medical care in the city of Murrieta.

187.   Defendants refused to allow Plaintiff the use of his car in order to drive into the city of Murrieta to patronize said businesses and to engaged in activities of public access.

188.  Plaintiff's physical conditions also prevented him from using public transportation from time to time when he needed to or wanted to patronize businesses or places of public accommodation in Murrieta.  Further, public transportation was otherwise unavailable at the times Plaintiff wished to, needed to, or wanted to patronize or visit places of business and public accommodation in Murrieta.

189.  In engaging in the aforementioned acts and omissions of Defendants discriminated against Plaintiff in violation of the ADA.  Defendants actions and omissions denied Plaintiff by not making needed businesses and places of public accommodation accessible to Plaintiff.

190.  Defendants' conduct is ongoing.

191.  Plaintiff was injured thereby in not being able to access said businesses and placed of places of public accommodation.

192.  Defendants' acts and omissions were the proximate cause of Plaintiff's injury;

193.  Plaintiff invokes his statutory right to declaratory and injunctive relief.

194.  Without the requested injunctive and declaratory relief Defendants shall continue to deny

Plaintiff access said businesses and placed of places of public accommodation.

### TWENTYTHIRD CAUSE OF ACTION
### 42 USC §1983 – Monell - Pervasive Practice or Custom
### (City of Murrieta)

195.    Plaintiff incorporates all preceding allegations herein.

196.     Defendants maintained unconstitutional customs, policies, or practices, within the

meaning of Monell v.Department of Social Services, 436 U.S. 658 (1978) ("Monell") as

follows: unlawfully detaining citizens to find out their identify; unlawfully detaining

citizens sitting in their cars to find out their identify; unlawfully detaining homeless

citizens to find out their identify;

197. The unlawful detainments of Plaintiff are due to a custom, policy or practice, official or

unofficial, of the city of Murrieta to unlawfully detain citizens who are not suspected of

violating any laws, including homeless people, and to exclude homeless people from their

city. Plaintiff has been personally unlawfully detained with no basis by the Murrieta

police 8 times from 2015 – 2018 by the Murrieta police where Plaintiff was breaking no

laws.   Plaintiff was detained unlawfully in Temecula in a public area south of Murrieta,

between Jefferson and Diaz, once again in the same general location in 2016, in addition

to the detainments of this action.

198. Plaintiff personally has witnessed the Murrieta police patrol the same area looking for

homeless people over a 4 year period of time.

199. Plaintiff has personally spoken with a group of homeless people who temporarily lived in

the same area south of Murrieta, between Jefferson and Diaz and Plaintiff was told that

the group had been unlawfully detained and ID'd by the Murrieta police on "several"

occasions.  That group consisted of 8 persons along with 1 other person who lived with

them at the time and was kicked out of the group, and 3−4 others who lived about 100 yards south of the main group.  These 12-13 people were unlawfully stopped, detained, and ID'd by the Murrieta police on at least 3 occasions for a total of 36 unlawful detainments of 12 different homeless people.

200. On about August 29, 2019 I spoke with an African American homeless person in the Winco parking lot (which effectively borders Murrieta) in Temecula who stated he had been stopped and detained on at least 10 occasions without basis by the Murrieta police and also stated that Murrieta was "F*cked up" as to how they treat homeless people. He said the Temecula police left him alone.

201. On about August 17, 2019 I spoke to a homeless person in front of the FedEx Office (near the Winco) on Winchester in Temecula who gave his estimate that he also was stopped and detained by the Murrieta police 10 times without a lawful basis.

202. The city of Murrieta has a custom, policy and/or practice of unlawfully detaining citizens to ID them without basis.

203.  Each of the preceding detainments of others was in the past 5 years.

204.  An unofficial policy exists and/or existed at all relevant times promoted by city leaders to pressure the sheriff deputies to ID all the homeless people in Murrieta and to  harass them out of the city.

205.  Deputies are also trained at city ratified POST academy and in the field how to conduct occupied vehicle checks aggressively to pretext stop citizens to ID them unlawfully.

206.  For these Monell issues, in addition to it being a custom, policy and /or pattern of Defendants, these unofficial policies are promulgated by high level sheriff leadership who have a final say in these matters.

207.  In each incident of Monell liability for Defendants all involved were acting under color of state law, these officials acts and inactions, and policies, customs and/or practices have injured Plaintiff, and each were acting under color of state law, and each Defendants acts or inaction were the proximate cause of Plaintiff's injury.

208. Defendants' unconstitutional customs, policies, and practices amounted to deliberate indifference of Plaintiff's Fourth Amendment rights. These customs, policies, and practices were the moving force behind the violation of Plaintiff's Fourth Amendment rights, and proximately, foreseeably and actually caused Plaintiff to suffer damages in an amount to be proven at trial.

### TWENTYFOURTH CAUSE OF ACTION
### 42 USC §1983 – Monell - Failure To Train, Supervise, Discipline
### (County of Riverside, City of Temecula)

209. Plaintiff incorporates all preceding allegations herein.

210. Defendants maintained unconstitutional customs, policies, or practices, within the meaning of Monell v.Department of Social Services, 436 U.S. 658 (1978) ("Monell") having failed to institute, require, and enforce proper and adequate training, discipline and/or supervision as follows of deputies to prevent: unlawfully detaining citizens, including Plaintiff, to find out their identify; unlawfully detaining citizens sitting in their cars to find out their identify; unlawfully detaining homeless citizens to find out their identify;

211. Plaintiff has complained personally on the phone to Murrieta Leadership to remedy the matter to no avail;

212. Plaintiff has filed directly sent letters to city council and the mayor about some of the misconduct of their police in an effort to get them to change their ways, properly train their deputies, supervise them and discipline them for unlawfully violating citizens rights to be free from unreasonable seizures.  Defendants are also aware of this lawsuit and its accuracy yet refuse to do anything to correct the unlawful conduct.

213. Defendants decision-making leadership want deputies to ID people even if that means they violating the citizen's civil rights and therefore have done nothing to properly train their deputies, supervise them, or discipline them as to unlawful 4th amendment seizures to ID citizens.

214. For these Monell issues, these decisions have come from high-level decision-makers of Defendants.

215. In each incident of Monell liability for Defendants all involved were acting under color of state law, these officials acts and inactions, and policies, customs and/or practices and/or failure to and lack of training, discipline and/or supervision have injured Plaintiff, and each were acting under color of state law, and each Defendants acts or inaction were the proximate cause of Plaintiff's injury.

216. Defendants' unconstitutional customs, policies, and practices amounted to deliberate indifference of Plaintiff's Fourth Amendment rights. These customs, policies, and practices and/or failure to and lack of training, discipline and/or supervision were the moving force behind the violation of Plaintiff's Fourth Amendment rights, and proximately, foreseeably and actually caused Plaintiff to suffer damages in an amount to be proven at trial.

**Relief Sought**

ON CAUSES OF ACTION 1, 6:

    1.  That Jacob be enjoined from detaining, citing, arresting Plaintiff for the sole act of driving into Murrieta in a car which he lives out of, or appears to live out of;

    2.  For Costs;

ON CAUSES OF ACTION 4:

    1.  For damages of $750,000 (Jointly and Severable against Michael Jacob, City of Murrieta).

    2.  For Costs;

    3.  For other such relief the Court deems proper.

ON CAUSES OF ACTION 13:

    1.  For damages of $250,000 (Jointly and Severable against Michael Jacob, City of Murrieta).

    2.  For Costs;

3.  For other such relief the Court deems proper.

ON CAUSES OF ACTION 7 :

1.  For damages of $50,000 (Jointly and Severable against Defendants listed therein).

2.  For Costs;

ON CAUSES OF ACTION 14:

1.  For damages of $50,000 (Jointly and Severable against Defendants listed therein).

2.  For Costs;

3.  For other such relief the Court deems proper.

ON CAUSES OF ACTION 15:

1.  For damages of $50,000 (Jointly and Severable against Defendants listed therein).

2.  For Costs;

ON CAUSES OF ACTION 16:

1.  For damages of $50,000 (Jointly and Severable against Defendants listed therein).

2.  For Costs;

ON CAUSES OF ACTION 17, 18:

1.  For damages of $50,000 (Jointly and Severable against Defendants listed therein).

2.  For Costs;

ON CAUSES OF ACTION 20:

1.  For damages of $50,000 (Jointly and Severable against Defendants listed therein).

2.  For Costs;

ON CAUSES OF ACTION 21, 23, 24:

1.  For damages of $500,000 (against Defendants listed therein).

2.  For Costs;

ON CAUSES OF ACTION 22:

1.  For damages of $500,000 (against Defendants listed therein).

2.  For Costs;

3.  For Declaratory Relief that Defendants violated and are discriminating against
Plaintiff in violation of the ADA;

4.   For Injunctive Relief that that Defendants be enjoined from prohibiting Plaintiff from legally driving into Murrieta in his car which he lives out of.

ON ALL CAUSES OF ACTION

1.   For other such relief the Court deems proper.


Dated:  September 29, 2020


Aaron Raiser

Complaint

**Proof/Certificate of Service**

I hereby certify that on September 29, 2020  , a copy of:

   **THIRD AMENDED COMPLAINT**

**w**as served on the following parties, via ECF.

Allen Christiansen
1631 E. 18th Street
Santa Ana, California 92705

Date:        September 29, 2020

_Aaron Raiser_
Aaron Raiser